IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD L. BAKER,<br><br>      Plaintiff,<br><br>  v.<br><br>M. CATE, N. GRANNIS, J. HUTCHINS, R.A. HOREL, M.D. YAX, and C.E. DUCART,<br><br>      Defendants.<br>                                     / | No. C 08-03592 CW (PR)<br><br>ORDER GRANTING DEFENDANT DUCART'S MOTION FOR SUMMARY JUDGMENT |

    Plaintiff Reginald L. Baker, a state prisoner, brought this case under 42 U.S.C. § 1983 against officials at Pelican Bay State Prison (PBSP), where he is currently incarcerated, alleging that Defendants unlawfully deprived him of property and violated his First Amendment right to freedom of speech.  In an order dated July 7, 2009, the Court dismissed Plaintiff's deprivation of property claim, and dismissed the claims against all Defendants except Defendant C.E. Ducart.  The Court found cognizable Plaintiff's First Amendment claim against Defendant Ducart and ordered service upon him.

    On December 7, 2009, Defendant Ducart filed a motion for summary judgment on the grounds that no triable issue of material fact exists and that he is entitled to judgment as a matter of law (docket no. 13).  Although given an opportunity to do so, Plaintiff did not file an opposition.

    For the reasons discussed below, Ducart's motion for summary judgment is GRANTED.

BACKGROUND[1]

During 2007, Defendant Ducart was the warden's designee who made decisions regarding whether an inmate could possess publications that contained sexually explicit material, in accordance with California Code of Regulations, title 15, § 3006(c).  Resp.'s Mot. Sum. Judg., Decl. of Ducart at ¶ 4.  PBSP permits inmates to possess images of breasts and genitalia which are purchased by the inmate if the images are shown in educational, artistic, or historical publications and are approved by the institution.  Id. at ¶ 5, citing § 3006(c)(17)(A), (B)(2).  PBSP also allows inmates to possess sexually explicit materials acquired by the department which are educational, medical/scientific, or artistic materials and inmates are permitted to possess sexually explicit letters and articles and sexually suggestive pictures of clothed people and similar images.  Id. at ¶¶ 6-7.

On or before September 9, 2007, Plaintiff ordered two art books entitled, "www.hrgiger.com" and "Saverio Tenuta Elegia."  Complaint at 3-3a.  On September 9, 2007, Ducart reviewed these books and found that they "contained images of female breasts, male and female genitalia, vaginal or anal penetration, and sexual positions with animal-like or mythical creatures."  Ducart Decl. at ¶ 9.  As a result, Ducart determined that the books were contraband under § 3006(c) and would have a tendency to create a hostile work environment.  Id. at ¶¶ 9, 11, Ex. 4.  Plaintiff received a "Notice of Disapproval," CDC Form 1819, which stated that the two books were prohibited by Ducart because they contained "sexually explicit

---

[1] The following facts are undisputed.

material showing frontal nudity and various sexual situations not covered by [CCR] Section 3006(c)(17)(B)(1)(2)." Complaint at 3a; Ducart Decl. at ¶ 9, Ex. 3.

On September 11, 2007, Plaintiff requested an interview with Receiving and Release at PBSP, indicating that he believed that the books were exempted under Section 3006(17)(B)(2). Alternatively, Plaintiff requested a reasonable accommodation by way of redacting the offensive materials. Id. The Receiving and Release Department rejected Plaintiff's request, noting that books could not be altered so Plaintiff would either have to mail them to another destination, donate them, or allow them to be destroyed. Id.

On September 16, 2007, Plaintiff filed a CDC 602 inmate appeal requesting the same exemption and reasonable accommodations. Id. at 3a-3b. On September 26, 2007, the appeal was denied, concluding that the books were not covered by any exemption and in fact were excluded under Section 3006(c)(17)(B). Id. at 3b; Ducart Decl., Ex. 6. Plaintiff subsequently filed a second level of appeal and a director's level appeal, both of which were denied. Complaint at 3b-3c.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

1    The moving party bears the burden of showing that there is no
2 material factual dispute.  Therefore, the Court must regard as true
3 the opposing party's evidence, if supported by affidavits or other
4 evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815
5 F.2d at 1289.  The Court must draw all reasonable inferences in
6 favor of the party against whom summary judgment is sought.
7 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
8 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
9 1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an
10 opposing affidavit under Rule 56, as long as it is based on
11 personal knowledge and sets forth specific facts admissible in
12 evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th
13 Cir. 1995).
14    Material facts which would preclude entry of summary judgment
15 are those which, under applicable substantive law, may affect the
16 outcome of the case.  The substantive law will identify which facts
17 are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
18 (1986).  Where the moving party does not bear the burden of proof
19 on an issue at trial, the moving party may discharge its burden of
20 showing that no genuine issue of material fact remains by
21 demonstrating that "there is an absence of evidence to support the
22 nonmoving party's case."  Celotex, 477 U.S. at 325.  The burden
23 then shifts to the opposing party to produce "specific evidence,
24 through affidavits or admissible discovery material, to show that
25 the dispute exists."  Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409
26 (9th Cir. 1991).  A complete failure of proof concerning an
27 essential element of the non-moving party's case necessarily
28 renders all other facts immaterial.  Celotex, 477 U.S. at 323.

DISCUSSION

Plaintiff claims that Ducart's refusal to allow him access to his art books violated his First Amendment right to freedom of speech. Complaint at 3. Plaintiff asserts that his books were an exception to the prison regulation because they are "art," and alternatively that the Department's policy results in a total ban on sexual expression, does not work to deter sexual harassment, and is an "exaggerated response" to the Department's concerns. Id. at 3c-3d. In addition, Plaintiff argues that there were reasonable alternatives to destruction or total banning of his books. Id. at 3d-3e.

Ducart responds that the books did not fall under any exception to the prison's ban on frontal nudity. Ducart Decl. at ¶ 10. Ducart refutes Plaintiff's suggestion that the policy completely bans sexual expression as the Department does allow other sexually explicit images. Id. at ¶¶ 9, 10. Further, Ducart rejects Plaintiff's suggested alternatives because they present cost, logistical, and safety issues. Id. at ¶¶ 19-23. Alternatively, Ducart asserts that he is entitled to qualified immunity.

A.   Facial Challenge to Section 3006(c)(17)

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). Where prison rules or regulations impede the exercise of a prisoner's constitutional rights, federal courts must discharge their duty to protect those rights. See id. However, courts must be aware that they are "ill equipped to deal with the increasingly urgent problems of prison administration and reform."

1 Id. (citation and internal quotation marks omitted).  Where the
2 regulations of a state prison are involved, "federal courts have
3 . . . additional reason to accord deference to the appropriate
4 prison authorities."  Id. at 85 (citation and internal quotation
5 marks omitted).
6     A prison regulation that limits a prisoner's exercise of his
7 or her constitutional rights will thus be upheld where it
8 "reasonably relate[s] to a legitimate penological interest."  Id.
9 at 89-90.  This determination entails consideration of four
10 factors:  (1) whether there is a rational relationship between the
11 regulation and the proffered legitimate government interest;
12 (2) whether inmates have alternative means of exercising their
13 asserted rights; (3) how accommodation of the claimed
14 constitutional right will affect guards, a prisoner's fellow
15 inmates, and the allocation of prison resources; and (4) whether
16 the policy is an "exaggerated response" to the prison's concerns.
17 Id.; see Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999)
18 (en banc).
19     1.   Rational relationship
20     As noted, section 3006(c)(17) bans "[s]exually explicit images
21 that depict frontal nudity in the form of personal photographs,
22 drawings, magazines or other pictorial format."  Cal. Code Regs.,
23 tit. 15, § 3006(c)(17).  The regulation defines sexually explicit
24 material as "material that shows the frontal nudity of either
25 gender, including the exposed female breast(s) and/or the genitalia
26 of either gender."  Cal. Code Regs., tit. 15, § 3006(c)(17)(A).
27 The regulation also provides, however, that inmates shall be
28 allowed access to the following sexually explicit material:

>     Educational, medical/scientific, or artistic
>     materials, including, but not limited to,
>     anatomy medical reference books, general
>     practitioner reference books and/or guides,
>     National Geographic, or artistic reference
>     material depicting historical, modern, and/or
>     post modern era art, purchased or possessed by
>     inmates and approved by the institution head or
>     their designee on a case-by-case basis.

Cal. Code Regs., tit. 15, § 3006(c)(17)(B)(2).

In considering, under the first prong of the Turner test, whether there is a rational connection between a challenged policy and a legitimate governmental interest, a court must determine "whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective." Mauro, 88 F.3d at 1059 (internal quotation marks and citation omitted).

Here, Plaintiff concedes that there is indeed a rational connection between the policy and a legitimate governmental interest. Complaint at 3c. The governmental objectives underlying section 3006(c)(17), specifically, maintaining the safety and security of the prisons, rehabilitating inmates, reducing sexual harassment of correctional officers and preventing a hostile work environment, are legitimate. Ducart Decl. at Ex. 2 (Initial Statement of Reasons). See Self v. Horel, 2008 WL 5048392, at *5 (N.D. Cal.); Nelson v. Woodford, 2006 WL 571359, at *3 (N.D. Cal.); see also Mauro, 188 F.3d at 1059 (finding objectives of maintaining jail security, rehabilitating inmates and reducing sexual harassment of female detention officers to be legitimate).

The policy is neutral. A regulation restricting access to certain types of publications is neutral if it furthers an important or substantial governmental interest unrelated to the

suppression of expression.  See Thornburgh v. Abbott, 490 U.S. 401, 415-16 (1989).  Section 3006(c)(17) draws distinctions between materials solely on the basis of the materials' potential effect on the prison's legitimate objectives, specifically, prison security, rehabilitation of inmates, and preventing the harassment of female correctional officers.  See Self, 2008 WL 5048392, at *5; Nelson, 2006 WL 571359, at * 4; accord Mauro, 188 F.3d at 1060 (holding that "the relationship between the possession of sexually explicit materials and the problems sought to be addressed by [such a] policy -- sexual harassment of female officers, jail security and rehabilitation of inmates -- is clear.").

Finally, there is a rational relationship between the ban on materials depicting frontal nudity, as set forth in section 3006(c)(17), and the legitimate governmental objectives put forth to justify it.[2]  See Self, 2008 WL 5048392, at *5;  Nelson, 2006 WL 57139, at *4; see also Mauro, 188 F.3d at 1060 (holding relationship between policy banning materials showing frontal nudity and jail's objectives rational even if "fit" not "exact," because "[t]he relationship between the jail's policy of prohibiting the possession of sexually explicit materials and the goals of preventing sexual harassment of the female officers,

---

[2]  Although Plaintiff asserts that the policy is ineffective in actually preventing sexual harassment, that argument is irrelevant to the determination of whether the policy is rationally related to the governmental objectives.  See Mauro, 188 F.3d at 1060 ("it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests . . . The only question that we must answer is whether the defendants' judgment was rational, that is, whether the defendants might reasonably have thought that the policy would advance its interests.") (internal quotations and citations omitted).

1  inmate rehabilitation and maintenance of jail security is not so
2  remote as to render the policy arbitrary or irrational").

### 2. Alternative Means

The second factor to be considered under <u>Turner</u> is whether there exist alternative means of exercising the challenged right that remain open to prisoners. <u>Mauro</u>, 188 F.3d at 1061. "Where 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to correctional officials . . . in gauging the validity of the regulation.'" <u>Id.</u> (quoting <u>Turner</u>, 482 U.S. at 90.)

Plaintiff asserts that section 3006(c)(17) is a complete ban on sexual expression. Complaint at 3c. Ducart argues that Plaintiff has a myriad of alternative means of receiving sexually explicit publications. For example, the policy at issue does not ban images of breasts and genitalia that are shown in medical books, National Geographic, or artistic reference material and the like. Ducart Decl. at ¶ 5. <u>See</u> Cal. Code Regs., tit. 15, § 3006(c)(17)(A), (B)(2). Further, inmates can possess such images that are purchased or acquired by the Department for inclusion in its libraries or educational areas. Ducart Decl. at ¶ 6. <u>See</u> Cal. Code Regs., tit. 15, § 3006(c)(17)(B)(1). In addition, sexually explicit letters and articles, photographs of clothed people, and lingerie and swimsuit catalogs are not prohibited by this policy. Ducart Decl. at ¶ 7.

Prison officials are not required to adopt the least restrictive means of achieving their legitimate objectives. <u>See</u> <u>Mauro</u>, 188 F.3d at 1060. The regulation at issue here, which

1 expressly allows inmates to possess certain sexually explicit
2 educational, medical/scientific, and artistic materials, see Cal.
3 Code Regs., tit. 15, § 3006(c)(17)(B), provides ample alternative
4 means for inmates to express their First Amendment right to access
5 sexually explicit materials that do not pose a threat to the
6 Department's legitimate governmental interests.  See Nelson, 2006
7 WL 571359, at *4 (finding § 3006(c)(17) satisfies second prong of
8 Turner test because, as with the policy at issue in Mauro, the ban
9 "does not include sexually explicit letters, articles or
10 photographs of clothed person(s)," and allows certain sexually
11 explicit materials under § 3006(c)(17)(B)); see also Mauro, 188
12 F.3d at 1061 (affirming the district court's determination that the
13 allowance of sexually explicit letters and articles or suggestive
14 photographs of clothed women provided ample alternative means to
15 justify the policy banning all sexually explicit depictions of
16 frontal nudity).

17      3.   Impact of Accommodation

18      The third Turner factor is a determination of the impact the
19 accommodation of the asserted constitutional right would have on
20 prison personnel, other inmates, and the allocation of prison
21 resources.  Mauro, 188 F.3d at 1061.  As relevant to the instant
22 challenge, the Court must assess the impact of allowing inmates
23 unrestricted access to sexually explicit materials.  Id.
24      Ducart argues that allowing inmates unrestricted access to
25 sexually explicit materials could jeopardize the safety of prison
26 personnel by provoking harassment of female guards and violence
27 among inmates stemming from the possession or use of such
28 materials.

1    As found by the district court in both <u>Self</u> and <u>Nelson</u>,
2 allowing inmates unrestricted access to sexually explicit materials
3 has a significant negative impact on female correctional officers
4 because of harassment, and on inmates and correctional officers
5 because of the potential for violence.  See <u>Self</u>, 2008 WL 5048392,
6 at *6; <u>Nelson</u>, 2006 WL 571359, at *4; <u>see also</u> <u>Mauro</u>, 188 F.3d at
7 1061 (finding significant negative impact if inmates afforded
8 unrestricted access to sexually explicit materials, because such
9 access "could lead to the bartering of sexually explicit materials
10 and anatomical comparisons which could in turn lead to fights
11 between inmates").  The unrestricted possession of sexually
12 explicit materials would have a significant negative impact on PBSP
13 personnel, other inmates, and the allocation of prison resources.

    4.   Exaggerated Response

15    The fourth and final <u>Turner</u> factor to be considered is whether
16 the policy is, in effect, an "exaggerated response" to the prison's
17 concerns.  See <u>Mauro</u>, 188 F.3d at 1062.  In that regard, the burden
18 is on the prisoner challenging the regulation, not on prison
19 officials, to show there are obvious, easy alternatives to the
20 regulation.  <u>Id.</u>

21    Plaintiff claims that section 3006(c)(17) is an exaggerated
22 response to prison concerns.  Complaint at 3d.  Specifically,
23 Plaintiff argues, there is no reason that inmates like himself, who
24 have not been accused of any sexual misconduct, should be denied
25 such materials.  <u>Id.</u>  Plaintiff suggests that the Department should
26 instead rely on disciplinary actions and legal recourse to deter
27 sexual misconduct and violence.  <u>Id.</u>  Additionally, Plaintiff
28 offers the alternative of allowing inmates in possession of

1  prohibited materials to remove the offending pages rather than
2  destroying an entire magazine or publication.  Id. at 3d-3e.  In
3  response, Ducart argues that Plaintiff's suggested alternatives
4  cannot be accommodated without significant costs to valid
5  penological interests.
6       Regarding Plaintiff's suggestion that the Department
7  discipline or prosecute prisoners who sexually harass staff or
8  expose the sexually explicit depictions in a harassing manner, the
9  Ninth Circuit has already decided that such an alternative could
10 not be obtained at a de minimis cost.  See Frost v. Symington, 197
11 F.3d 348, 358 (9th Cir. 1999) ("forcing prison officials to wait
12 until after violations have occurred before restricting inmates'
13 access to these materials would unduly tie the hands of prison
14 officials who see the need for preventive measures").  Moreover,
15 allowing inmates who have no record of sexual misconduct to possess
16 sexually explicit materials that are currently prohibited may still
17 create a hostile work environment for female officers because such
18 materials could be bartered to obtain goods or services from other
19 inmates.  See Self, 2008 WL 5048392, at *7, (citing Mauro, 188 F.3d
20 at 1061).
21      Alternatively, Plaintiff's proposal that the Department merely
22 remove specific offending pages from publications and other
23 materials rather than destroying or removing the entire publication
24 also does not come at a de minimis cost.  PBSP receives
25 approximately 70,000 pieces of incoming mail per month and has six
26 to nine mailroom employees to process and scan each piece for
27 contraband.  Ducart Decl. at ¶ 19.  To require prison staff to
28 review each publication for purposes of finding and removing

1  prohibited pages could cause significant delay in the delivery of
2  mail as well as slow down the mail room operations.  Id. at ¶ 20.
3  In addition, inmates are prohibited from possessing property that
4  has been altered because "altered property makes it easier for
5  inmates to conceal contraband in it, which jeopardizes prison
6  security."  Id. at ¶¶ 13-14.

7  As noted, prison officials are not required to adopt the least
8  restrictive means of achieving their legitimate objectives.  See
9  Mauro, 188 F.3d at 1063.  The ban on frontal nudity set forth in
10 section 3306(c)(17) is not an exaggerated response to prison
11 officials' legitimate penological concerns, in that the regulation
12 bans those materials deemed most likely to impact prison personnel
13 and other inmates negatively, but does allow inmates to have access
14 to certain sexually explicit materials, such as sexually explicit
15 letters, articles or photographs of clothed persons, and
16 educational and artistic materials.  See Self, 2008 WL 5048392, at
17 *7; Nelson, 2006 WL 571359, at *4 (holding section 3006(c)(17) not
18 subject to challenge under fourth Turner factor; noting regulation
19 contains ample alternatives for prisoners to acquire sexually
20 explicit materials).

21 Thus, Plaintiff has failed to provide a ready alternative to
22 section 3006(c)(17) that would accommodate the prison's legitimate
23 penological objectives.  Consequently, Plaintiff has not carried
24 his burden as to the fourth Turner factor.

25 In sum, for the reasons stated above, the Court concludes that
26 section 3006(c)(17) is reasonably related to legitimate penological
27 interests, see Thornburgh, 490 U.S. at 413, and, accordingly, the
28 regulation does not violate the First Amendment.  See Self, 2008 WL

1 5048392, at *8; <u>Nelson</u>, 2006 WL 571359, at *5; <u>see also</u> <u>Mauro</u>, 188
2 F.3d at 1063.
3 B.   <u>As-applied Challenge to Section 3006(c)(17)</u>
4     Having found section 3006(c)(17) is not unconstitutional on
5 its face, the Court next considers whether Ducart, in denying
6 Plaintiff access to "www.hrgiger.com" and "Saverio Tenuta Elegia"
7 applied the regulation in an unconstitutional manner.
8     As noted, section 3006(c)(17) prohibits inmates from
9 possessing sexually explicit images that depict frontal nudity,
10 including male and female genitalia.  Cal. Code Regs., tit. 15,
11 § 3006(c)(17)(A).  Plaintiff was denied a copy of "www.hrgiger.com"
12 and "Saverio Tenuta Elegia" because at least eight pages of the
13 books depicted frontal nudity.  Complaint at 3a.  There is no
14 factual dispute as to the nudity depicted in the book.  Rather,
15 Plaintiff argues, Ducart wrongly determined that "www.hrgiger.com"
16 and "Saverio Tenuta Elegia" were not exempted materials under
17 section 3006(c)(17)(B)(2).
18     Here, Ducart determined that "www.hrgiger.com" and "Saverio
19 Tenuta Elegia" did not come within the exception under section
20 3006(c)(17)(B)(2) because they were not akin to "materials like
21 Michelangelo's David and those typically seen in National
22 Geographic, medical-reference books, education materials, and
23 traditional art books that are carried by public schools."  Ducart
24 Decl. at ¶ 10.  Plaintiff argues Ducart should have allowed him to
25 possess the books because they were "art" and the challenged images
26 were fictional characters rather than real people.  Complaint at
27 3a, Ex. B.
28

1    Prison officials are to be provided broad discretion to
2 determine what publications may enter a prison.  See Thornburgh,
3 490 U.S. at 416.  Regulations that provide for individualized
4 determinations as opposed to predetermined categorical exclusions
5 strike an acceptable balance between the prison's legitimate
6 governmental objectives and prisoners' First Amendment rights.  See
7 id. at 416-17 & n.15.  Here, section 3006(c)(17)(B) provides for
8 individualized determinations as to what sexually explicit
9 materials inmates may possess.  Even if, as Plaintiff argues,
10 "www.hrgiger.com" and "Saverio Tenuta Elegia" have some artistic
11 value, it was neither arbitrary nor irrational for Ducart to deny
12 Plaintiff access to the publications.  See Mauro, 188 F.3d at 1060.
13 While section 3006(c)(17)(B)(2) allows inmates to possess some
14 sexually explicit materials, it does not require that inmates be
15 allowed to possess sexually explicit material solely because it is
16 deemed to have educational or artistic value.  Further, Ducart's
17 decision did not deprive Plaintiff of the right to possess either
18 educational art materials that do not contain frontal nudity, or
19 that otherwise meet the requirements of section 3006(c)(17)(B)(2).
20    In sum, Ducart's individualized determination to ban
21 "www.hrgiger.com" and "Saverio Tenuta Elegia" was a constitutional
22 application of section 3006(c)(17).  See Self, 2008 WL 504392, at
23 *7-8 (finding prison officials' individualized determination to
24 preclude prisoner from receiving "The Practical Guide to Drawing"
25 which depicted at least seven pages of images of frontal nudity was
26 constitutional application of § 3006(c)(17)); Nelson, 2006 WL
27 571359, at *5 (finding constitutional application of § 3006(c)(17)
28 with respect to prison officials' individualized determination to

1  preclude prisoner's receipt of Esquire magazine).  Because there is
2  no triable issue with respect to whether Plaintiff was properly
3  denied access to "www.hrgiger.com" and "Saverio Tenuta Elegia,"
4  summary judgment will be granted in favor of Ducart.

C. <u>Qualified Immunity</u>

Ducart claims, in the alternative, that even if Plaintiff's allegations revealed a constitutional violation, qualified immunity would protect him from liability for Plaintiff's First Amendment claim.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The rule of qualified immunity provides ample protection to "all but the plainly incompetent or those who knowingly violate the law;" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001) (internal quotation marks and citation omitted). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Id.</u> at 201. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 818 (2009). Where there is no clearly established law that certain conduct

1 constitutes a constitutional violation, a defendant cannot be on
2 notice that such conduct is unlawful.  <u>Rodis v. City and County of</u>
3 <u>S.F.</u>, 558 F.3d 964, 970 (9th Cir. 2009).  The relevant, dispositive
4 inquiry in determining whether a right is clearly established is
5 whether it would be clear to a reasonable defendant that his
6 conduct was unlawful in the situation he confronted.  <u>Saucier</u>, 533
7 U.S. at 202.

8     On these facts, viewed in the light most favorable to
9 Plaintiff, Ducart prevails as a matter of law on his qualified
10 immunity defense because the record establishes no constitutional
11 violation.  <u>See</u> <u>Harlow</u>, 457 U.S. at 818.  However, even assuming a
12 constitutional violation had occurred with respect to Plaintiff's
13 First Amendment claim, Ducart could reasonably have believed his
14 conduct was lawful.  California Code of Regulations title 15,
15 section 3006(c)(17) includes frontal nudity of either gender,
16 including exposed breasts and genitalia, in its definition of
17 prohibited "sexually explicit material."  It would not have been
18 clear to a reasonable official that denying Plaintiff the
19 publications containing the images at issue here would have been
20 unlawful.  Ducart is entitled to qualified immunity.

21                                 CONCLUSION

22     For the foregoing reasons, Ducart's motion for summary
23 judgment (docket no. 13) is GRANTED.  Judgment shall be entered in
24 favor of Defendants.  All parties shall bear their own costs.
25     IT IS SO ORDERED.

26
27 Dated:  8/2/2010                    _____
                                     CLAUDIA WILKEN
28                                   UNITED STATES DISTRICT JUDGE

|   |   |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | FOR THE |
| 3 | NORTHERN DISTRICT OF CALIFORNIA |

| | |
|---|---|
| REGINALD L. BAKER, | Case Number: CV08-03592 CW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| M. CATE et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 2, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Reginald L. Baker F-24891
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Dated: August 2, 2010

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk